**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **CHANELLE HAYNES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** _____ |
| **v.** | ) | **JURY DEMANDED** |
| | ) | |
| **MERCY HEALTH, MERCY** | ) | |
| **HOSPITALS EAST COMMUNITIES,** | ) | |
| **and LAURA M. MAGEE,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT**

COMES NOW the Plaintiff, Chanelle H. Haynes (hereinafter "Ms. Haynes" or "Plaintiff"), by and through counsel, and for her Complaint against Defendants Mercy Health ("Mercy Health"), Mercy Hospitals East Communities ("Mercy East") (collectively, "Mercy") and Laura M. Magee ("Magee") (collectively, "Defendants"), for compensatory and punitive damages arising from repeated, intentional, and unauthorized access to Plaintiff's protected health information and personally identifiable information, and the misuse and dissemination of that information, would show this Honorable Court and a jury of her peers the following:

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff Chanelle H. Haynes is an adult resident of the State of Missouri and, at all relevant times, was a patient receiving medical care at Mercy facilities located within the Eastern District of Missouri.

2.      Defendant Mercy Health is a healthcare organization that operates, manages, and oversees a network of hospitals, clinics, and medical facilities in Missouri, including facilities

1

located within the Eastern District of Missouri. Upon information and belief, Mercy Health establishes, promulgates, and enforces system-wide policies, procedures, and standards governing patient privacy, HIPAA compliance, workforce training, access to electronic medical records ("EMR"), auditing, and data security applicable to Mercy-branded facilities in Missouri. At all relevant times, Mercy Health exercised control and authority over the policies, systems, and practices that governed access to Plaintiff's protected health information. Mercy Health may be served through its registered agent, CSC-Lawyers Incorporating Service Company, at 221 Bolivar Street, Jefferson City, Missouri 65101 for service of process.

3.    Defendant Mercy Hospitals East Communities is a Missouri nonprofit corporation that owns, operates, manages, and controls Mercy Hospital St. Louis and other Mercy-branded healthcare facilities within the Eastern District of Missouri. Mercy Hospitals East Communities is the entity responsible for employing workforce members in Missouri, maintaining electronic medical record ("EMR") systems used in Missouri facilities, and implementing and enforcing privacy, compliance, and access-control policies applicable to Missouri patients. It may be served through its registered agent, CSC-Lawyers Incorporating Service Company, at 221 Bolivar Street, Jefferson Cty, Missouri 65101 for service of process.

4.    Defendant Laura M. Magee is an adult resident of the State of Missouri who, at all relevant times, was employed by and/or acting as an agent of Mercy Hospitals East Communities and was granted authorized credentials to access Mercy's EMR and related protected computer systems.

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law, including the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.

6.    This Court has supplemental jurisdiction over Plaintiff's Missouri statutory and

2

common-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal claims.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the Eastern District of Missouri, including at Mercy facilities located in St. Louis County, Missouri.

**FACTS**

8. Mercy and Mercy East collect, store, and maintain vast quantities of highly sensitive patient data, including protected health information ("PHI") and personally identifiable information ("PII"), within centralized EMR and related information systems used across Mercy facilities.

9. Mercy affirmatively represents to patients, regulators, and the public that it safeguards patient confidentiality, limits access to PHI to legitimate job-related purposes, and maintains auditing and compliance mechanisms to detect and prevent unauthorized access.

10. Plaintiff is a Mercy patient whose PHI and PII were stored within Mercy's EMR systems, including information protected under HIPAA and Missouri common law.

11. Defendant Laura Magee, while employed by Mercy Hospitals East Communities, was issued unique login credentials and granted access to Mercy's EMR systems and protected computers.

12. Upon information and belief, Magee had a known and highly sensitive personal connection to Plaintiff through the father of Plaintiff's child, creating an obvious and foreseeable risk that Magee would misuse access to Plaintiff's confidential records for personal reasons.

13. Between approximately December 2024 and April 2025, Magee intentionally, repeatedly, and without authorization accessed Plaintiff's confidential medical records on more

3

than eighteen (18) separate occasions.

14.     Mercy later admitted and confirmed in writing to Plaintiff, by correspondence dated on or about April 15, 2025, that these accesses were unauthorized and violated Mercy's internal policies and privacy rules.

15.     The information wrongfully accessed included, but was not limited to: Plaintiff's full name, date of birth, Social Security number, home address, diagnoses, medical imaging, treatment details, and other sensitive clinical and identifying data.

16.     Magee had no legitimate patient-care, billing, operational, or other job-related reason to access Plaintiff's records, and Magee's access violated explicit Mercy policies restricting access solely to records necessary for legitimate treatment, payment, or healthcare operations.

17.     After obtaining Plaintiff's private information through Mercy's systems, Magee used and referenced that information to harass, intimidate, and retaliate against Plaintiff.

18.     On or about May 29, 2025, Plaintiff received an unsolicited text message from an unknown number stating, "Aww you at mercy with [minor son's name]," referencing Plaintiff's presence at a Mercy facility with her child earlier that morning. The sender was not in Plaintiff's contact list. The message demonstrates that Magee or a Mercy-affiliated source had knowledge of Plaintiff's real-time medical visit that was consistent with knowledge obtained through unauthorized access to or disclosure of Mercy records.

19.     At the time this message was sent, Magee was no longer authorized to access Plaintiff's records, yet the message confirms ongoing disclosure of Plaintiff's PHI by Mercy personnel or affiliates.

20.     As a direct and proximate result of Defendants' conduct, Plaintiff reasonably feared

4

for her safety and the safety of her child and was forced to vacate her residence and secure alternative housing, incurring significant financial losses including forfeited rent, deposits, moving expenses, and relocation costs.

21.    Plaintiff's vehicle was vandalized and her mother's vehicle was intentionally damaged following threats and retaliatory conduct, events Plaintiff reasonably attributes to the misuse of her address and personal information obtained through Mercy's systems.

22.    Plaintiff suffered severe emotional distress, including anxiety, panic attacks, depression, and sleep disruption, requiring medical treatment, counseling, and prescription medication.

23.    Plaintiff also suffered reputational harm and professional setbacks caused by false and malicious statements made or disseminated by Magee using information derived from Mercy's internal systems.

24.    Plaintiff, through counsel, repeatedly placed Mercy on notice of the violations and demanded corrective action, audits, and safeguards.

25.    Despite notice, Mercy failed to implement effective measures to prevent continued access and disclosure, demonstrating conscious disregard for Plaintiff's rights and safety.

26.    Plaintiff incurred substantial out-of-pocket costs and losses responding to and mitigating the breaches, including credit monitoring, identity-theft protection, fraud alerts, account monitoring, personal security measures, and other mitigation expenses.

27.    Defendants' conduct was willful, reckless, malicious, and oppressive, justifying an award of punitive damages under Missouri law.

**CAUSES OF ACTION**

**COUNT I – Computer Fraud and Abuse Act (18 U.S.C. § 1030)**

28. Plaintiff incorporates by reference Paragraphs 1 through 27 as if fully set forth herein.

29. Mercy's EMR and related systems constitute "protected computers" under 18 U.S.C. § 1030(e)(2) because they are used in and affect interstate commerce and communication.

30. Magee intentionally accessed a protected computer without authorization and/or exceeded authorized access by obtaining information she was not entitled to obtain for non-business, personal, and retaliatory purposes in violation of 18 U.S.C. § 1030(a)(2)(C).

31. Magee's conduct also caused damage and/or loss within the meaning of the CFAA and constitutes a violation of 18 U.S.C. § 1030(a)(5).

32. Plaintiff suffered "loss" aggregating at least $5,000 in value during a one-year period, including costs of responding to the intrusion, damage to property, moving expenses and losses, assessing and mitigating security and privacy harms, credit/identity monitoring, and related consequential costs.

33. Plaintiff is entitled to compensatory damages and injunctive and/or other equitable relief under 18 U.S.C. § 1030(g).

### COUNT II – Negligence

34. Plaintiff incorporates by reference Paragraphs 1 through 33 as if fully set forth herein.

35. Mercy owed Plaintiff a duty to exercise reasonable care to safeguard Plaintiff's PHI and PII, including by implementing and enforcing reasonable access controls, monitoring, auditing, training, and supervision.

36. Mercy breached its duty by, among other things:

(a) Failing to implement and/or enforce reasonable access controls and role-based

6

restrictions;

(b)    Failing to adequately monitor and timely detect repeated unauthorized access;

(c)    Failing to adequately train and supervise workforce members with access to sensitive data;

(d)    Failing to timely investigate, remediate, and prevent continued access and disclosure after notice; and

(e)    Otherwise failing to exercise reasonable care under the circumstances.

37.    Mercy's breaches were the direct and proximate cause of Plaintiff's injuries and damages.

38.    Plaintiff suffered compensatory damages, including emotional distress, financial loss, loss of privacy, and other consequential damages.

## COUNT III – Negligent Supervision and Retention

39.    Plaintiff incorporates by reference Paragraphs 1 through 38 as if fully set forth herein.

40.    Mercy knew or should have known that granting and maintaining Magee's access posed a foreseeable risk of misuse of patient information, particularly given the known personal connection and/or warning signs evident from repeated accesses.

41.    Mercy failed to properly supervise Magee's access, failed to timely restrict access, and failed to take reasonable corrective measures to prevent foreseeable misuse.

42.    Plaintiff's damages were the foreseeable and proximate result of Mercy's negligent supervision and retention.

## COUNT IV – Invasion of Privacy / Intrusion Upon Seclusion

7

43.     Plaintiff incorporates by reference Paragraphs 1 through 42 as if fully set forth herein.

44.     Magee intentionally intruded upon Plaintiff's private affairs by repeatedly and unauthorizedly accessing Plaintiff's confidential medical records.

45.     Mercy, through its acts and omissions, permitted, facilitated, and failed to prevent the repeated intrusions.

46.     The intrusion would be highly offensive to a reasonable person.

47.     Plaintiff suffered damages including emotional distress and loss of privacy.

### COUNT V – Public Disclosure of Private Facts / False Light

48.     Plaintiff incorporates by reference Paragraphs 1 through 47 as if fully set forth herein.

49.     Magee disclosed and/or caused disclosure of Plaintiff's private facts to third parties without authorization, including private medical and personal information.

50.     The disclosed facts were not of legitimate concern to the public, and disclosure would be highly offensive to a reasonable person.

51.     To the extent Magee made statements placing Plaintiff in a false light, such statements were highly offensive, and Magee acted with knowledge or reckless disregard as to the falsity and the false light created.

52.     Plaintiff suffered damages, including reputational harm and emotional distress.

### COUNT VI – Intentional Infliction of Emotional Distress

53.     Plaintiff incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

8

54.     Magee's conduct—repeatedly accessing Plaintiff's PHI/PII without authorization, using that information to threaten and harass Plaintiff, and facilitating dissemination of Plaintiff's private information—was extreme and outrageous.

55.     Magee intended to cause, or recklessly disregarded the high probability of causing, severe emotional distress.

56.     Plaintiff suffered severe emotional distress and related damages.

57.     To the extent Mercy's conduct in ignoring known risks and failing to remediate after notice rose to reckless disregard, Mercy is liable as discovery further supports.

**COUNT VII- Breach of Fiduciary Duty**

58. Plaintiff incorporates by reference Paragraphs 1 through 57 as if fully set forth herein.

59. Under Missouri law, healthcare providers owe patients a fiduciary duty of confidentiality with respect to medical information received in connection with diagnosis, treatment, and care.

60.  At all relevant times, Mercy Health and Mercy Hospitals East Communities stood in a fiduciary relationship with Plaintiff by virtue of Plaintiff's status as a patient and Defendants' custody, control, and exclusive access to Plaintiff's protected health information ("PHI") and personally identifiable information ("PII").

61.   Defendants breached their fiduciary duties by, inter alia:

a.  Failing to maintain the confidentiality of Plaintiff's medical and personal information;

b.  Permitting and failing to prevent repeated unauthorized access to Plaintiff's medical records;

c.  Failing to adequately supervise, monitor, and restrict workforce access to Plaintiff's PHI after notice of misuse;

d.  Allowing Plaintiff's confidential medical information to be accessed and disclosed for non-medical, personal, and retaliatory purposes.

e.  Defendants' breaches were not isolated or accidental, but occurred repeatedly over an extended period, despite Defendants' actual knowledge of the risk and their ability to prevent further harm.

f.  As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff suffered damages including, but not limited to, Severe emotional distress, anxiety, and mental anguish; Loss of privacy and dignity; Forced relocation and safety-related expenses; and Reputational harm and loss of personal security.

62.  Plaintiff's damages arise from violations of duties independent of any contractual relationship and include non-economic and personal injuries, such that the economic-loss doctrine does not apply.

63.  Defendants' conduct demonstrated conscious disregard for Plaintiff's rights and supports an award of punitive damages under Missouri law.

### COUNT VIII- Missouri Merchandising Practices Act

64. Plaintiff incorporates by reference Paragraphs 1 through 63 as if fully set forth herein.

65.  Defendants Mercy are "persons" engaged in the sale or provision of "merchandise" within the meaning of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010 and 407.020, including healthcare services and related privacy and data-security practices.

66.  In connection with the sale and provision of healthcare services to Plaintiff, Defendants represented—expressly and implicitly—that they would safeguard Plaintiff's

medical and personal information, limit access to legitimate medical purposes, and comply with privacy and confidentiality standards.

67. These representations were material to Plaintiff's decision to purchase and continue receiving healthcare services from Defendants.

68. Defendants engaged in unfair, deceptive, and unlawful practices in violation of the MMPA by, inter alia:

a. Failing to disclose inadequate safeguards protecting patient medical information;

b. Failing to disclose known risks of unauthorized access by employees with personal conflicts;

c. Representing that patient information would be protected while failing to implement reasonable safeguards;

d. Allowing repeated unauthorized access and disclosure of Plaintiff's confidential information.

69. As a direct result of Defendants' unlawful practices, Plaintiff suffered an ascertainable loss, including the loss of the benefit of the bargain, in that:

a. Plaintiff paid for healthcare services that were represented to include reasonable confidentiality and data protection;

b. The actual value of the services received was less than the value as represented due to Defendants' failure to protect Plaintiff's information.

70. Plaintiff further incurred out-of-pocket expenses, mitigation costs, and personal losses resulting from Defendants' unlawful practices.

71. Plaintiff's MMPA claim is based on statutory consumer-protection duties and benefit-

11

of-the-bargain damages recognized by Missouri courts in data-privacy cases, and is not barred by the economic-loss doctrine.

72. Defendants Mercy's conduct was willful and knowing, entitling Plaintiff to recover actual damages, punitive damages, attorneys' fees, and costs pursuant to Mo. Rev. Stat. § 407.025.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Court enter judgment in her favor and against Defendants, awarding:

A.    Compensatory damages in an amount to be proven at trial;

B.    Punitive damages as allowed by Missouri law;

C.    An award of reasonable attorneys' fees and costs as authorized by Mo. Rev. Stat. § 407.025 and other applicable law, including Plaintiff's costs of suit and expenses incurred in responding to Defendants' unlawful conduct;

D.    Injunctive and/or equitable relief, including orders requiring Mercy to implement corrective privacy safeguards, audit and block improper access to Plaintiff's records and any related records improperly accessed through the same conduct's records, and provide appropriate credit/identity monitoring; and

E.    Such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

13

RESPECTFULLY SUBMITTED this the 13th of May, 2026.


_s/ William A. Wooten_
William A. Wooten (BPR #60397)
WOOTEN LAW OFFICE
120 Court Square East
Covington, TN 38019
(901) 475-1050
(901) 234-0028/facsimile
William@wootenlawoffice.com

We acknowledge ourselves as sureties for the costs of this cause not to exceed One Thousand Dollars ($1,000.00).

_s/ William A. Wooten_
WOOTEN LAW OFFICE
